IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL CASE: 1:22-CR-113-TCB-JKL |
| RODNEY BROOKS | |

<u>MOTION TO SUPPRESS EVIDENCE OBTAINED THROUGH
AUTOMATED LICENSE PLATE READER DATABASE SEARCHES</u>

COMES NOW Rodney Brooks, by and through his undersigned counsel and hereby moves the Court to suppress evidence obtained through violations of the Fourth Amendment, specifically evidence obtained by the Government through Automated License Plate Reader (ALPR) database searches.

<u>Factual Background</u>

On March 4, 2021, approximately $134,000 was stolen from a Brinks truck while the Brinks employee was out of the truck and attempting to load money in an ATM machine at the Navy Federal Credit Union located at 5898 Roswell Road in Sandy Springs, Georgia.  Surveillance footage from the credit union and a dash cam on the Brinks truck showed that the money

thief (or thieves) arrived and departed in a white GMS Terrain with a temporary license tag.

Automated License Plate Reader databases were consulted by law enforcement investigators and revealed the movements of the white GMC Terrain.  The same databases also revealed that a black Nissan Pathfinder was spotted near the GMC Terrain at some point that day.  The license plate from the Pathfinder was searched and it was eventually discovered that Rodney Brooks rented the black Nissan Pathfinder on February 27, 2021 from Enterprise Car Rental in N. Kingwood, Texas.  When law enforcement pulled the rental agreement, they also discovered an email address associated with Mr. Brooks and his telephone number.  Literally, every part of the investigation that followed (at least as relates to Mr. Brooks) flows from the information discovered as a result of the automated license plate reader database searches.

Rodney Brooks and two others are charged in the above-numbered indictment with conspiracy to steal money from a Brinks truck (count one); bank larceny (count two); and possession of stolen money (count three).  Law enforcement agents arrested Mr. Brooks at his home in Houston, Texas on August 2, 2022.  A Magistrate Judge in the arresting district released Mr. Brooks on bond after which he made his initial appearance in

this Court.  Undersigned counsel was appointed to represent Mr. Brooks at that time.

<u>Argument and Authority</u>

We contend that the ALPR database searches are searches within the meaning of the Fourth Amendment as interpreted by the Supreme Court in *Carpenter v. United States*, 585 U.S. ___, 138 S.Ct. 2206 (2018).  Thus these searches required warrants or reliance on a recognized exception to the warrant requirement.  The fruits of the ALPR database searches cover the entire investigation.  We seek suppression of it all.

I.    The Supreme Court's opinion in *Carpenter v. United States*

In *Carpenter v. United States*, 138 S. Ct. 2206, 2211 (2018), the Supreme Court considered the following question: "[W]hether the Government conducts a search under the Fourth Amendment when it accesses historical cell phone records that provide a comprehensive chronicle of the user's past movements." The answer the Court found was yes.  Id. at 2233.

In reaching this conclusion, the Court highlights several fundamental Fourth Amendment "guideposts." 138 S. Ct. at 2214. For instance, it explained, "a central aim of the Framers was 'to place obstacles in the way of a too permeating police surveillance.'" Id. (quoting *United States v. Di Re*, 332 U.S. 581, 595 (1948)). To this end, "[a]s technology has enhanced the

Government's capacity to encroach upon areas normally guarded from inquisitive eyes, this Court has sought to 'assure[ ] preservation of that degree of privacy against Government that existed when the Fourth Amendment was adopted.'" Id. (quoting *Kyllo v. United States*, 533 U.S. 27, 34 (2001)).

The Supreme Court determined that given the Fourth Amendment implications, "the acquisition of [] CSLI was a search," and "conclude[d] that the Government must generally obtain a warrant supported by probable cause before acquiring such records." 138 S. Ct. at 2221. The Government, however, "acquired the cell-site records pursuant to a court order issued under the [SCA], which required the Government to show 'reasonable grounds' for believing that the records were 'relevant and material to an ongoing investigation.'" Id (quoting 18 U.S.C. § 2703(d)). And "[t]hat showing [fell] well short of the probable cause required for a warrant." Id. The Supreme Court, therefore, determined, "an order issued under Section 2703(d) of the Act is not a permissible mechanism for accessing historical cell-site records. Before compelling a wireless carrier to turn over a subscriber's CSLI, the Government's obligation is a familiar one—get a warrant." 138 S. Ct. at 2221.

The majority opinion in *Carpenter* then turned to the dissent's contention "that the warrant requirement simply does not apply when the Government acquires records using compulsory process." 138 S. Ct. at 2221. According to the dissent, "[u]nlike an actual search, [] subpoenas for documents do not involve the direct taking of evidence; they are at most a 'constructive search' conducted by the target of the subpoena." Id. at 2252-53. In the dissent's view, "this Court's precedents set forth a categorical rule . . . subjecting subpoenas to lenient scrutiny without regard to the suspect's expectation of privacy in the records." Id.

The majority flatly rejected this view: "this Court has never held that the Government may subpoena third parties for records in which the suspect has a reasonable expectation of privacy." 138 S. Ct. at 2221 (emphasis added). Indeed, "[i]f the choice to proceed by subpoena provided a categorical limitation on Fourth Amendment protection, no type of record would ever be protected by the warrant requirement." Id. at 2222. This was untenable. The court held a warrant is required "where the suspect has a legitimate privacy interest in records held by a third party." Id.

Finally, *Carpenter* ended with an important reminder: "the Court is obligated—as '[s]ubtler and more far-reaching means of invading privacy have become available to the Government'—to ensure that the 'progress of

science' does not erode Fourth Amendment protections. Here the progress of science has afforded law enforcement a powerful new tool to carry out its important responsibilities. At the same time, this tool risks Government encroachment of the sort the Framers, 'after consulting the lessons of history,' drafted the Fourth Amendment to prevent." 138 S. Ct. at 2223 (citations omitted). The Supreme Court, therefore, "decline[d] to grant the state unrestricted access to a wireless carrier's database of physical location information." Id.

Turning to the specific issues before it, the Court focused on the need to protect "a person's expectation of privacy in his physical location[.]" 138 S. Ct. at 2215. That privacy interest, however, had to be reconciled with the court's "third-party doctrine" – i.e., "that 'a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties.'" Id. at 2216 (quoting *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979)).

The solution was straightforward. The Supreme Court simply declined to extend the third-party doctrine to Cell Site Location Information ("CSLI") records: "the fact that the information is held by a third party does not by itself overcome the user's claim to Fourth Amendment protection. Whether the Government employs its own surveillance technology . . . or

leverages the technology of a wireless carrier, we hold that an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI." 138 S. Ct. at 2217.

Of note, the Court found that there was a reasonable expectation of privacy in the CSLI despite the fact that the information was voluntarily provided to a third-party. The Court rejected the Government's "primary contention" that, under the third-party doctrine, "cell-site records are fair game because they are 'business records' created and maintained by the wireless carriers." 138 S. Ct. at 2219. This position "fail[ed] to contend with the seismic shifts in digital technology[.]" Id. In particular, unlike other information, which "reveal[s] little in the way of 'identifying information,'" "the Government fail[ed] to appreciate that there are no comparable limitations on the revealing nature of CSLI." Id.. "The Court has in fact [] shown special solicitude for location information in the third-party context." Id. (emphasis added).

II.    The Warrantless Database Search Violated Mr. Brooks' Fourth Amendment Rights.

This Court should employ the framework set forth in *Carpenter* and find that the warrantless searches of the ALPR databases violates the Fourth Amendment. The Court should reach this conclusion because Mr. Brooks

had a reasonable expectation of privacy in his location and movements, the search of such data requires a warrant, therefore the Government's warrantless search of the database violated Mr. Brooks' Fourth Amendment rights, and the appropriate remedy is suppression of the evidence.

A.     Mr. Brooks Had a Reasonable Expectation of his Privacy in his Location and Movements

Mr. Brooks had an expectation of privacy in his location and movement data during the five months the state collected and maintained his ALPR data.  Driving on public roads does not relinquish a person's Fourth Amendment rights: "[a] person does not surrender all Fourth Amendment protection by venturing into the public sphere." *Carpenter*, 138 S. Ct. at 2217.  Moreover, "individuals have a reasonable expectation of privacy in the whole of their physical movements" because of the "privacies of life" those movements can reveal. *Carpenter*, 138 S. Ct. at 2217 (citing *United States v. Jones*, 565 U.S. 400, 430 (2012) (Alito, J., concurring in judgment); id. at 415 (Sotomayor, J., concurring)).

As is relevant here, in *Carpenter* the Court held that a Fourth Amendment search occurs when the Government tracks an individual's movements by accessing seven or more days of location data. 138 S. Ct. at 2220. The Court recognized that the expectation of privacy at issue was not

about "using a phone," but rather in the record of a person's location and movements revealed by data generated by use of the phone. Here, Mr. Brooks' expectation of privacy was not in individual aspects of his rental car or its license plate, but in the record of his location and movement data as revealed by ALPR data.

As Justice Alito explained in *Jones*, "[i]n the precomputer age, the greatest protections of privacy were neither constitutional nor statutory, but practical. Traditional surveillance for any extended period of time was difficult and costly and therefore rarely undertaken." 565 U.S. at 429 (Alito, J., concurring in judgment).  But technological advancements such as ALPR now allow the Government to surveil those who come within their jurisdiction 24 hours a day.  And these records are stored, which allows law enforcement to review months and sometimes years' worth of location and movement data.  Because of the volume and amount of data stored and later searched by the Government, Mr. Brooks had an expectation of privacy in his location and movements.

B.   The Search of ALPR Database Infringed upon Mr. Brooks' Expectation of Privacy

In *Carpenter*, the Court discusses the following factors in finding that the use of historical cell site location information implicates the Fourth

Amendment: the detailed nature of the data collected, the indiscriminate nature of the data collection, and the ability to conduct retrospective searches. ALPR data implicates all of these factors.  Moreover, unlike the data at issue in *Carpenter*, the primary purpose of ALPR data is to determine the precise location and movement data of a vehicle at a specific time.  This and the other factors provided in *Carpenter* demonstrate that the search of the ALPR database requires a warrant.

First, in *Carpenter*, the Supreme Court noted that "like GPS tracking of a vehicle, cell phone location information is detailed, encyclopedic, and effortlessly compiled." 138 S. Ct. at 2216.  The ALPR database searched by the Government in this case has these same characteristics.  The cameras at issue are on day and night, they record not only the license plates of vehicles, but also people in the vehicles, and pedestrians walking nearby. From there, the system converts the data into a computer readable format that can be searched by law enforcement.  Once law enforcement officials type in the license plate, the system returns reports which include the location and direction of travel at a specific date and time.  This type of data is more precise and comprehensive that the CSLI data at issue in *Carpenter*.

Second, an equally important factor in *Carpenter* was the recognition that cell phone tracking allows the Government to track essentially any

person at any time. "[T]his newfound tracking capacity runs against everyone," the Court wrote, and "[o]nly the few without cell phones could escape this tireless and absolute surveillance." 138 S. Ct. at 2218. The same holds true for ALPRs. Like cell phone records, ALPR data allows the Government to determine the location of movements of everyone who comes within the range of a camera.

Third, in distinguishing CSLI from traditional law enforcement surveillance, the *Carpenter* Court noted: "the retrospective quality of the data" which "gives police access to a category of information otherwise unknowable." 138 S. Ct. at 2218. As the Court explained, CSLI is akin to a time machine that allows law enforcement to look at a suspect's past movements, something that would be physically impossible without the aid of technology: "[i]n the past, attempts to reconstruct a person's movements were limited by a dearth of records and the frailties of recollection. With access to CSLI, the Government can now travel back in time to retrace a person's whereabouts, subject only to the retention polices of the wireless carriers." Id. At a minimum, ALPR records provide equivalent capabilities. And with CSLI, at best it indicates that a phone was used by someone, not necessarily who used the phone. ALPR cameras have the ability to capture an image of the driver. Thus, it is more invasive that CSLI.

The *Carpenter* Court concluded that the warrantless review of location data violated Mr. Carpenter's reasonable expectation of privacy.  138 S. Ct. at 2217 to 2218. Here, the Government obtained five months without of location data without a warrant.  As was the case in *Carpenter*, this Court should find that the warrantless review of Mr. Brooks' location and movement data violated his reasonable expectation of privacy.

C.     Searching the ALPR Database Required a Warrant

Here, the Government searched the ALPR database(s) without a warrant. As was the case in *Carpenter*, the Court concluded that the search of CSLI constituted a search under the Fourth Amendment. 138 S. Ct. 2219 ("Accordingly, when the Government accessed CSLI from the wireless carriers, it invaded Carpenter's reasonable expectation of privacy in the whole of his physical movements.").  The same should hold true here: the search of ALPR database should require a warrant as well.

Moreover, warrantless searches "undertaken by law enforcement officials to discover evidence of criminal wrongdoing" are typically unreasonable absent limited and specific exceptions. *Carpenter*, at 2221 (citing *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 652-53 (1995)). None of those exceptions apply here.  Because *Carpenter* was decided before the search of the database, the Government cannot rely on good faith to justify

the warrantless search.  Therefore, the search of the ALPR database to determine Mr. Brooks' location and movements violates his reasonable expectation of privacy.

      D.    Suppression is the Appropriate Remedy

This Court should suppress the ALPR data obtained by the Government and their fruits, because the search of the database occurred without a warrant.  As *Carpenter* explained: "We decline to grant the state unrestricted access to a wireless carrier's database of physical location information. In light of the deeply revealing nature of CSLI, its depth, breadth, and comprehensive reach, and the inescapable and automatic nature of its collection, the fact that such information is gathered by a third party does not make it any less deserving of Fourth Amendment protection." 138 S. Ct. at 2223. The same should hold true here.  Therefore, this Court should find, as did the Court in *Jones*, that the appropriate remedy for the warrantless tracking of vehicles is suppression.  565 U.S. at 413.

II.    The Extension of Carpenter in the Context of Long Term Aerial Surveillance as Persuasive Authority

An en banc Fourth Circuit opinion has extended *Carpenter* to a different long term surveillance program, the use of aerial surveillance. See *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330 (4th Cir. 2021)

("Beautiful Struggle")). In *Beautiful Struggle*, the Fourth Circuit, applying *Carpenter*, found long-term aerial surveillance violated the Fourth Amendment. For the same reasons cited by the court in Beautiful Struggle, the warrantless search of an ALPR location database violates the Fourth Amendment.

A. Leaders for a Beautiful Struggle Supports Requiring the use of a Warrant to Search an ALPR Location Database

In *Beautiful Struggle*, a group of grassroots community advocates in Baltimore moved the district court to enjoin the Baltimore Police Department ("BPD") from implementing the Aerial Investigation Research ("AIR") program. Id. at 333. The AIR program had two components: (1) airplanes flying over the city during daylight hours (approximately 40 hours per week) photographing roughly 32 square miles per image per second; (2) a database allowing law enforcement officers up to 45 days to review photographs based on time and/or location. Id. at 334.

The district court in *Beautiful Struggle* denied the plaintiff's motion for injunctive relief against the AIR program.    The district court rejected the argument that under *Carpenter*, such surveillance would violate the Fourth Amendment by "relying on precedents that approved warrantless pole cameras and flyover photography, and distinguishing CSLI as 'a far more

intrusive, efficient, and reliable method of tracking a person's whereabouts.'" Id. at * 330 (citing Leaders of a Beautiful Struggle v. Balt. Police Dep't, 456 F. Supp. 3d 699, 712-16 (D. Md. 2020)). The plaintiffs appealed the denial, which ultimately was decided by the Fourth Circuit en banc.

The en banc panel responded to the district court's analysis by turning to *Carpenter*. "The touchstone in Carpenter was the line of cases addressing 'a person's expectation of privacy in [their] physical location and movements.'" Beautiful Struggle, 2 F.4th at *340. The court noted that *Carpenter*, applying *United States v. Jones*, 565 U.S. 400 (2012), "identified 'a reasonable expectation of privacy in the whole of [a person's] physical movements,' and held that 'Government access to [CSLI] contravenes that expectation.'" Id. at *341 (citing 138 S. Ct. at 2217). Thus, in the digital age, the court found, "*Carpenter* solidified the line between short-term tracking of public movements—akin to what law enforcement could do '[p]rior to the digital age'—and prolonged tracking that can reveal intimate details through habits and patterns." Regarding "prolonged tracking," the court said that this "form of surveillance invades the reasonable expectation of privacy that individuals have in the whole of their movements and therefore requires a warrant." (citing *Carpenter*, at 2218).

The Fourth Circuit found that accessing the data collected by the AIR program constituted a search under the Fourth Amendment. 2 F.4th at 2021 WL 2584408 at *10. In so ruling, the court explained: "we consider not only the raw data, but what that data can reveal[;] BPD can deduce an individual's identity from AIR data, other available information, and some deductive reasoning." Id. at 344 (internal citation omitted).

<u>CONCLUSION</u>

WHEREFORE, we pray that the Court will suppress the evidence and fruits that were obtained from the warrantless search of the ALPR database(s). We submit that an evidentiary hearing will be needed to further flesh out the facts necessary for the Court's analysis.

Respectfully submitted, this 30th day of April, 2023.

*V. Natasha Perdew Silas*
V. Natasha Perdew Silas
Georgia State Bar Number 571970
Attorney for Rodney Brooks

FEDERAL DEFENDER PROGRAM, INC.
1500 CENTENNIAL TOWER
101 MARIETTA STREET, NW
ATLANTA, GEORGIA 30303
404-688-7530
NATASHA_SILAS@FD.ORG